Good morning to the court, and may it please the court, my name is Elliot Passick, I am the attorney for the plaintiff appellants in this case, and this is my co-counsel, Mr. Jonathan Newman. We believe that the complaint is sufficient and good, and that the Rule 12 pre-answer motion should have been denied. It's a 28-page complaint that adequately pleads the facts and that correctly pleads the law. I think the discussion should begin with the U.S. Supreme Court's ruling that the factual allegations be plausible, and that courts utilize their common sense and discretion and wisdom in determining Rule 12 pre-answer motions to dismiss. Rule 8 itself calls for a short and plain statement, and our 28-page complaint provides a short and plain statement. It should also be emphasized that the plaintiff in this case, at the time of the incident involved, was three months old. He's a three-month-old baby, he's under the jurisdiction of this court, and this case can't even be settled without the permission of the court. The parents noticed a bump on his neck. He was having breathing issues because the bump was impressing upon his airway, which is called stridor. They immediately took the child to his pediatrician who recommended that he go to Columbia Hospital here in Manhattan. It's one of the best children's hospitals in the world. They did so promptly. All of this is pleaded in the complaint. The bump is a VLM, a venal lymphatic malformation, a collection of lymphatic non-cancerous cells. The X-ray, the filming, and the MRI encompass not only the bump, which diagnosed as VLM, but it also encompassed various bone areas, including the acromion, which is the bone at the juncture of the clavicle and the shoulder blade. And Dr. Rizal Shapiro, pediatric radiologist, chairman of the department, wrote actually two radiological reports, which in my experience is very, very, very unusual. I've never seen that before. One radiologist, same day, same time, writes two reports. First report said it's a fracture. Second report said it's a mild thickening of the acromion, which is compatible with a subacute fracture. There's a difference between a fracture and a subacute fracture. I'd like to point that out. A fracture is a fracture that actually exists at the time of the radiological exam. A subacute fracture is a healing fracture. So Dr. Rizal Shapiro in her report said that it's compatible with a fracture, leaving the door open with a subacute fracture, leaving the door open for being something else. But Dr. Lee reported to ACS that there was a fracture. That is correct. Incorrectly. But the problem with the complaint, I mean, to plead, you have a lot of individual defendants named. Yes. And you need to plead the defendant's personal involvement in the deprivation. So how does the complaint do that? So we pleaded the two commissioners. They weren't commissioners at the same time. We pleaded the four lawyers. The trial lawyer at the time of the family court case, which was called in by Dr. Lee and not investigated in any other manner, Dr. Lee was a young pediatrician at Columbia, not a radiologist, and there was no other investigation. But in any event, we pleaded the four lawyers whose names were on the litigation papers. And Jacqueline Shea Benson was the trial lawyer. And because she was the trial lawyer in the family court, that is why the defendants did not move to dismiss on her behalf. There was no motion to dismiss for Defendant Benson. Instead, Judge Chen, sua sponte, in one of the multiple sua sponte rulings, dismissed Jacqueline Shea Benson, the handling attorney, out of this case with a sua sponte ruling. What was your theory as to why the attorney would be personally involved? Because an attorney is supposed to use independent judgment in proceeding with a case. You just don't follow orders. If something is wrong, you say so. And if necessary, the attorney should withdraw and say, I'm not doing this. I'm not going to court and handling this improper case. There was no evidence. There was absolutely no evidence. The only thing they had was a baby, subacute fracture. That's it. Dr. Lee, the in-house pediatrician, interviewed the mother. And the mother said, no, we didn't abuse the baby. We didn't take a blunt object and strike the three-month-old baby on the shoulder. We didn't yank the arm backwards. Those are the only two ways a fracture can occur of the acromion. It's very, very unusual. It's exceptionally rare. So Benson should have withdrawn from the case. Why? Because it's unethical to proceed with a case like this, seizing, basically kidnapping, using kidnapping warfare and separating an actual child from his parents. That's constitutional law. That's a violation of Federal rights. But, you know, the difficulty, I think, with these kinds of cases is once a complaint comes in from a medical professional about the possibility of abuse, maybe there is an explanation. I know there was an issue about vitamin D deficiency or something like that. But they're sort of, ACS workers are kind of, you know, between a rock and a hard place. They have to make these quick decisions. On the one hand, if they leave a child when there are signs or reports, and it turns out badly, the question is, why didn't you act sooner and remove the child for safety reasons until you could investigate? On the other hand, if they do remove a child to investigate, then they're faced with a potential lawsuit. I think that that's, you know, I'm trying to understand why you claim the lawyer and these other individuals who don't appear under the allegation staff personal involvement should have acted to intervene. Lawyers should not believe frivolous cases. Lawyers should not seize, be part of any plan to rip away children from their parents. If I can ask you a factual question. ACS withdrew its petition ultimately, correct? Seven and a half months later. No, no, I understand that. But there was never a court finding of abuse one way or the other, correct? They just withdrew their petition? Actually, there was a section 10 family court, section 1027 hearing, in which ACS wanted the children placed in foster care pending a final determination of the case. Judge Glover denied that. Okay? I'd like to address something else you brought up, Judge where ACS doesn't exactly know what to do. But two months later, in January of 22, one of the world's literally greatest orthopedic surgeons, Dr. John Handelsman, who is chairman emeritus of the LIJ general and pediatric departments, both departments, who has a 46-page resume, wrote a brilliant expert witness report, which is part of this appendix. And he looked at the x-ray film and he examined all the medical records and he said, this is not a child abuse. He said that this is a situation. If you're going to have a fractured acromion, you're also going to have a fractured clavicle, because it's a small baby. You're also going to have a fractured shoulder blade. None of that happened. You're also going to have nerve damage to the brachial plexus nerves. None of that happened. All right? And this was a situation, he said, where some mothers nurse and then there's a mild vitamin D deficiency and that's what caused the mild thickening, pardon me, the mild thickening of the acromion bone. And that's specifically pleaded in the complaint. The defense did not have an expert witness. Surely, after the Handelsman report, they should have withdrawn the fact, they should have dropped the case. They didn't do that. And the parents did not have full custody of their children for the next five months. So those are constitutional violations. And we plead them on all violations in addition to that. Now, there's a rule 15 in the FRCP which provides for leave to amend shall be freely given. And we said that if there's any deficiency that the court finds, we should be given the opportunity, the statutory opportunity to make a motion to amend. We announced that in our papers. And also in a memorandum of law, we even cited some of the additional ideas and theories that we would put in our proposed amendment complaint. And we lost that opportunity. The defendants in their opposition papers did not even ask, did not even oppose our statement that we want to have, that we will move to leave to amend. This is horrible. This is terrible. This is basically converted into a summary judgment motion on the merits where we did not have the opportunity to present all our evidence. And believe me, there's plenty of other evidence. And that's just not right. So in response to that, Judge Chen said, well, you could have amended as of right. But that's up to the lawyers if we want to amend as of right. In order for us to – if we wanted to amend as of right, we would be acknowledging the correctness of the defendant's motion to dismiss, which we didn't want to do because we think our complaint was good. And, Mr. Pacek, you've reserved two minutes of rebuttal time. Do you want to use them now or reserve them for rebuttal? I will keep my two minutes rebuttal time. Thank you. May it please the Court, Jeremy Swader for the city defendants. The District Court properly granted the city defendants' motion to dismiss. Plaintiffs failed to plausibly allege any of the individual defendants had the kind of personal involvement with the alleged actions here that they'd need to be able to hold them responsible for constitutional violations. Furthermore, they didn't adequately allege municipal liability under Monell. Start with the failure to allege any sort of personal action that was a constitutional violation means they don't have a Monell claim. But beyond that, even, they haven't alleged, plausibly alleged, the kind of policy, official act, custom, failure to train, deliberate indifference that you need to have a Monell claim. And the District Court went through this very carefully. All the rationales the District Court presented were correct. I just want to correct a few points that I heard from my colleague. The city did move to dismiss the claims against Benson on immunity grounds. So there wasn't a failure to dismiss for Benson as well. Second of all, I believe that maybe the timeline is slightly off here because it was February 1, so about two and a half months after the action started, that the family court denied essentially the removal proceeding. I wanted to try to understand just the sequence of events. So ACS receives a report from the hospital and they move for an emergency order to not discharge the child to the parents. Child is allowed to remain with the grandparents with parents having supervised visitation, right? I think there was another part of that, too, that may be the aunt. I think that children, I'm a little unclear about this, whether the aunt was in the home. That's not relevant to my question. Okay, sorry. The complaint talks about termination of parental custody, which I think is different than termination of parental rights. As I read the statutory scheme, the way typically a case evolves is if there's a similar complaint like this, there's a hold on the child, then the parents are moved for temporary custody of the child. Is that what their complaint refers to as termination of parental custody? I think it's a misterm. It's a misterm? Yeah. Okay, that's what I wanted to confirm because I think of termination of parental custody or termination of parental rights as being a complete severance of any and all rights in relationship with a child, which can't happen typically until there are reunification efforts and steps. So that was just a misnomer in the complaint? Yes, this was about the temporary custody. That's all we're talking about. ACS never sought to terminate their parental rights. Never got to that point. It wasn't a predictive termination of parental rights at the outset. That's what I'm trying to say. I'm not sure that such a thing even exists. If it does in Connecticut, perhaps not in New York. Thank you. Okay, unless there's any further questions, let me just see if I had anything else that I wanted to I do want to note the couple of cases that were mentioned. This is about the amendment. Well, what about leave to amend? Yes, I want to address that. Thank you. So first of all, there was never a request for leave to amend, right? This was brought up as part of their memorandum of law. So now we're talking about hypothetical things that we don't even have a proposed amended complaint to talk about. So this is a completely hypothetical idea we're talking about now. Well, it's raised in the opposition papers. It was a footnote that said they would like to be able to amend, which is not how you properly seek to leave to amend. You propose amended complaints so we can see what you're going to allege. That's typically the way it's done. So that hasn't even happened here. But more importantly, the cases that they cited, three cases that say, well, this is what gets us to the custom and the practice. There's one case which has similar type allegations related to a mandated reporter, a medical reporter. That's the Smart case. That was settled without any finding of liability. So I don't think that gets them anywhere. The other two cases, L.B. versus City of New York and Gold, the facts of those cases are completely distinct from that here. Those involved allegations that ACS is essentially pressuring parents to allow them to search their homes when there's been a complaint of some sort of misdemeanors, has nothing to do with mandated reporting and looking at whether what the doctor is telling you is correct or not. It does not get them anywhere in terms of Monell liability. Here, what we had was we had a doctor. No reason to believe that this doctor was not credible. You had a court that looked at this and basically gave a court imprimatur to moving forward. And eventually what happened was, yes? In their filings, in their opposition to the motion to dismiss, plaintiffs alleged new claims, correct? Presumably that would have been in their amended complaint. I don't believe there are any new claims in terms of what is the causes of action. Not claims, but new factual allegations, or they raised additional factual allegations, correct? The only additional factual allegations had to do with these other cases that I've just mentioned and statistics about how ACS, somehow some ACS cases. What I'm getting at, counsel, is that the court seemed to address some of those in its decision.  And then found that amendment would be futile because it had addressed those additional factual allegations that presumably would have been made in an amended complaint. That is correct, Your Honor. All right. So my question then is, are there any new allegations that were made in briefing, albeit not in a proposed motion to amend, that the court didn't address? I don't believe so, because the only real facts here had to do with how they were trying to support their Monell claim. There were no underlying facts that explained why any of the individuals who were alleged here could have done something that could lead, you know, rise to the level of a constitutional violation. This morning, your adversary focuses on the timing of the, when the, by the time the expert witness files a report, there should have been, I mean, I guess the inference is that the individual defendants, or at least some of them, should have reacted to that much more promptly than they did. I think that's right. That's part of the problem with the pleadings here is that we're hearing new focuses of the case today. And we really should be, if they want to bring a constitutional claim, we should understand what that is. Not hear about it today. But I would say, too, that this is why I wanted to talk about the timeline. Because what happened is, it was February 1, about two and a half months after the proceeding started, that the court basically denied the removal proceeding and said the parents have full custody now, with continuing ACF supervision granted. And that was not dismissed until, I believe, June or July. I'm forgetting the exact date at this point. But it's not exactly the way that they have explained it in their argument. Thank you, Your Honor. We'll hear about it. Thank you. I'd like to clarify just one or two factual points. To be clear, this case, the family court case began in November of 2021. And there had to be required approved supervisors supervising the children continuously from November 2021 until June 30, 2022. That's clearly put in the complaint. So there was a loss of total custody. There wasn't a loss of full custody. But there was only partial custody for the parents. There had to be an approved family member, the aunt, who happened to be a pediatrician, or grandparents, or a brother or a sister, all of whom had to be vetted. That was continuously. I want to make that 100% clear. And that was even after the Dr. John Handelsman report, which came out, I believe, in January of 2022, two months after the case began, which was crystal clear. The case should have been dropped then, and we wouldn't be here in court today arguing. We wouldn't have filed a lawsuit for two months. Seven and a half months, we'll file a lawsuit for. And I'd like to be clear also about the theories, if I could just – I have 53 seconds left. The Memorandum of Law in the court below did plead some additional ideas and theories that we would have pleaded in an amended complaint. We just made an announcement that if this complaint is no good, we'll make a motion to amend. And at page 17 of our Memorandum of Law in opposition, I'll read it verbatim. While the ACS manual provides guidance on closing cases as well as on the initial filing of family court petitions, it provides no guidance whatsoever on the filing of such actions that are based on medical reporters, which is the situation here, or the discontinuance of family court actions where ACS knows or should know there's no longer a good faith basis for the continuation of the action. So we announced – that's one of the ideas that we put in our memo, which we would put in – which we would have put into our motion to amend had there not been such harsh treatment by Judge Chen. I also move to disqualify Judge Chen. I made that clear in my papers. I don't think I need to go into that. Thank you so much. Thank you both, and we will take the matter under advisement. Thank you so much.